[No. 20306.   Department One.   March 8, 1927.]

H. W. SIMS *et al., Respondents,* v. W. S. ROBISON *et al.,*
*Appellants.*[1]

[1] VENDOR AND PURCHASER (23, 26, 166)—MISREPRESENTATIONS AS
TO CONDITION—ESTOPPEL OR WAIVER OF RIGHT.   A farmer, ex-
perienced in western Washington farming, cannot claim fraud-
ulent representations as to the condition, state, and value of
a place traded to him as "old run down ranch," which he
personally inspected and fully inquired about and. lived on
thereafter for more than a year in apparent satisfaction with
the trade.

[2] SAME (60, 64)—RESCISSION BY VENDEE—FRAUD—ESTOPPEL OR
WAIVER OF RIGHTS.   Purchasers of a South Dakota farm are
not entitled to rescind for fraudulent representations as to
the condition and state of the property, inducing a trade, where,
after inspection of the place and discovery of the fraud, they
accepted installment payments and made no claim for a rescis-
sion for over a year and not until the other parties to the trade
had commenced a suit for damages on the ground of fraud.

Appeal from a judgment of the superior court for
King county, Truax, J., entered April 15, 1926, in favor
of the plaintiffs, in an action for damages for fraud,
and denying a cross-complaint for rescission, after
trial to the court.   Reversed as to the damages; and
affirmed as to the denial of a rescission.

*Hastings & Stedman,* for appellants.

*Wright & Catlett,* for respondents.

MITCHELL, J.—H. W. Sims and wife owned a farm
with some improvements on it in the state of South
Dakota.   It had incumbrances on it somewhat in excess
of two thousand dollars.   Leroy Corkery and wife
owned a forty acre farm with some improvements on
it in Whatcom county, this state.   It had incumbrances
on it somewhat in excess of two thousand dollars.   Each

¹Reported in 253 Pac. 788.

farm was listed by the owners with W. S. Robison, a real estate agent in Seattle. He succeeded in getting the parties to exchange properties on May 31, 1923, and as a part of the expressed consideration for the Whatcom county property, Sims and wife agreed to pay two thousand two hundred fifty dollars on the installment plan. Sims and wife took possession of the property about June 15, 1923, and commencing August, 1923, made five monthly payments on their contract. Later installments falling due were not paid.

In the summer of 1924 this action was commenced by Sims and wife against Robison and wife and Corkery and wife to recover damages for alleged false and fraudulent representations in the sale of the land purchased by them. It may be stated generally that the alleged fraudulent representations related to the number of acres cleared; the topography of the land; the number and condition of fruit trees on the place; the quality of the soil and kinds of growing timber; suitability of the land for certain crops; size and condition of the dwelling house and outhouses; distances from each a grade school and a high school; distances from a neighboring town and a railroad station; that the stumps and logs on the place could be easily removed; that it was worth six thousand five hundred dollars; that it would keep thirty or forty head of cattle; that it would produce forty tons of hay; and that the place was all fenced. They further alleged that they were unacquainted with the property and its value and that they relied on the representations made by Robison, who pretended to be familiar with the property and its value.

Robison and wife and Corkery and wife answered jointly, denying any misrepresentation on their part, and Corkery and wife set up a cross-complaint in which they alleged fraudulent representations on the part of

the plaintiffs in the sale of the South Dakota property and asked for a rescission, alleging tender of all payments made by Sims and also a tender of deeds of reconveyance. The alleged fraudulent representations complained of against the plaintiffs were numerous and largely similar in kind to those charged upon the defendants by the plaintiffs. Plaintiffs denied they had made any misrepresentation. The case was tried to the court. No finding of fact or conclusion of law was made. Judgment was entered in favor of the plaintiffs against Robison as an individual and against him and his wife as a community in the sum of two thousand five hundred dollars, and it was further adjudged that defendants Corkery and wife take nothing on their cross-complaint. Defendants have appealed.

There is very considerable testimony in the case relating to the several particulars in which each side accused the other of misrepresenting his property, and in nearly every respect a decided conflict in the evidence appears. Much of the testimony is unimportant in our view of the controlling features of the case. Respondents left their home in South Dakota and came to Seattle months prior to February, 1923, at which time their farm in South Dakota was under delinquent taxes and a two thousand dollar mortgage to the rural credit board of the state of South Dakota. They learned that the rural credit board of South Dakota was insisting upon payments. A few weeks later, they listed their property for sale with Robison. The rural credit board continued negotiations to collect. On May 5, 1923, respondents relisted their property with Robison at a price much less than that fixed in the original listing, advising him of the pressure of the rural credit board for payments. The trade between the parties of their properties was made on May 31, 1923.

In the meantime, Sims had become interested in the offer of the Whatcom county farm. He was an experienced farmer. Some years ago, he lived in this state and testified that he farmed a year in Snohomish county and worked around on farms before he purchased the Whatcom county place and "had a good knowledge of farming in western Washington." The forty acre ranch had not been occupied for several years. When respondents' attention was called to it by Robison, it was described to them in a circular entitled "Old run down forty acre ranch." The agent gave Sims directions to find the place and advised him of the name of the farmer on an adjoining tract, in no way interested on behalf of the appellants, of whom he could inquire. Sims visited the place and examined it, unaccompanied by anyone representing the appellants. On the visit, he talked with the person on the adjoining farm about the place in a number of particulars, mentioned that he had been on it and asked and received the opinion of the farmer as to the value of the place. Before he finally purchased it, he reported his examination of it to the agent and decried the ranch in many particulars, until, as he testified, there was some question in the agent's mind as to whether he had seen the right place, though the agent denied he entertained or expressed any such doubt. That he had seen the right place there can be no question. He moved on that place after purchasing it and has made it his home since that time. Sims has worked elsewhere, giving very little attention to cultivating the place since he purchased it. His wife, who has continuously lived on the place, expressed to neighbors, on several occasions in the course of several months, their satisfaction with the trade.

In the meantime, in the early fall of 1923, Robison on behalf of Corkery, visited the South Dakota farm, neither of the appellants having seen it at the time of

the trade. Thereafter he reported to Corkery grave misrepresentations by Sims as to the physical and material condition of that farm, and on January 17, 1924, he wrote to Sims saying that Corkery was dissatisfied, mentioning a number of improvements that Sims had represented as being on the place that were not there, called attention to Sims' written statements with regard to them and estimated damages in the sum of seven hundred dollars. Nothing was done to adjust this claim and some months thereafter this action was commenced by Sims and wife.

[1] The case must be decided, in our opinion, against the respondents upon the principle announced in *MacKay v. Peterson*, 122 Wash. 550, 211 Pac. 716, and similar earlier cases cited in the opinion in that case. That case states the rule in the form of a question, as follows:

"Having actually gone upon the land for the purpose of inspection, and having had every opportunity to satisfy himself as to the facts in any way he might choose, there being nothing said or done to deter him, may he now be heard to say that he relied upon the alleged misrepresentations of the seller?"

The decision was against him.

To the same effect is the case of *Farrar v. Churchill*, 135 U. S. 609, where the court said:

"Fraud is never presumed; and where it is alleged the facts sustaining it must be clearly made out. The representation must be in regard to a material fact, must be false and must be acted upon by the other party in ignorance of its falsity and with a reasonable belief that it was true. It must be the very ground on which the transaction took place, although it is not necessary that it should have been the sole cause, if it were proximate, immediate and material. If the purchaser investigates for himself and nothing is done to prevent his investigation from being as full as he chooses, he

cannot say that he relied on the vendor's representa-
tions. *Southern Development Company v. Silva,* 125
U. S. 247.''

True, there are cases, some of which are cited on
behalf of the respondents, to the effect that a vendee
may rely upon representations of the vendor, as re-
spondent Sims says he did in this case, notwithstanding
some investigation by or opportunity on the part of
the vendee to ascertain the truth himself. But it will
be found they are cases where the facts were peculiarly
within the knowledge or means of knowledge of the
vendor or his agent or for any reason the falsity of
the representations were not readily ascertainable by
the vendee. But this is not that kind of a case. Here
the vendee was an experienced farmer. He was buying
a western Washington farm. He had a good knowledge
of farming in western Washington. He examined the
place. It was all open to him and its condition in all
respects readily and reasonably ascertainable by him.
Here the purchaser, a man of experience in the business
about which he was engaged, had the ability, means and
opportunity to find out the truth about the matter. He
made use of the opportunity and upon suggestion of the
vendor made an independent examination of the prop-
erty without hindrance as to the extent of the examina-
tion, and also made inquiries about it of a disinterested
person operating the adjoining farm. He resorted to
the proper means of verification before he entered into
the contract, thus excluding the notion of reliance on
the representations made to him.

[2] On the other branch of the case, appellants
Corkery and wife are not entitled to relief in rescission
of the contract. In September, 1923, Robison as agent
for them made a thorough examination of the South
Dakota farm and claims to have found it greatly de-

ficient in material respects from the written representations made by Sims in disposing of the property. Thereafter he as agent, with the knowledge of Corkery, by direction to their bank, received several payments from respondents on the Whatcom county property. Robison upon his return from South Dakota promptly made a report of his investigation to Corkery and thereafter, as already stated, they estimated their damages and demanded payment of Sims. No claim or attempt at rescission was made on Sims until October 22, 1924, several months after this suit was instituted, and more than a year after it was alleged the true facts had been ascertained, after which time they received several payments from Sims. Our cases, as well as other authorities generally, hold that, if the party defrauded continues to receive benefits under the contract after he has become aware of the fraud, or otherwise conducts himself with respect to the contract as though it were still binding and available for the enforcement of legal rights, he will be deemed to have affirmed the contract and waived his right to rescind. He must act with diligence, which, though measured by the circumstances of each individual case, is lacking in the present case, in our opinion, as the trial court decided. *Kellner v. Rowe,* 137 Wash. 418, 242 Pac. 353, and cases cited therein; 4 R. C. L. 514, § 26.

The judgment in favor of the respondents and against the appellants Robison and wife is reversed, with directions to the trial court to dismiss the action. The judgment denying Mr. and Mrs. Corkery the right to rescind their contract is affirmed.

MACKINTOSH, C. J., MAIN, FULLERTON, and FRENCH. JJ., concur.